IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

PRO EDGE L.P. d/b/a TRANS OVA
GENETICS, INC. and TRANS OVA
GENETICS, L.C. f/k/a TRANS OVA
GENETICS, INC.,

         Plaintiffs,

vs.

CHARLES S. GUE, III, DVM

         Defendant.

No. C05-4068-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION TO
MODIFY PRELIMINARY
INJUNCTION AND REQUEST FOR
HEARING AND ORDER
MODIFYING PRELIMINARY
INJUNCTION

———————————

**TABLE OF CONTENTS**

I. *INTRODUCTION AND FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . 2
   A. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   B. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   A. *Standards For Modification Of A Preliminary Injunction* . . . . . . . . 11
   B. *Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . 14
      1. *The defendant's arguments for modification* . . . . . . . . . . . . . 14
      2. *The plaintiffs' arguments in resistance* . . . . . . . . . . . . . . . 16
   C. *Modification* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      1. *Changed circumstances* . . . . . . . . . . . . . . . . . . . . . . . . 18
      2. *Equity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

On June 1, 2005, this court granted the application for a preliminary injunction of a limited liability company seeking to protect their existing and prospective business contracts with cattle producers requiring embryo transfer services by enjoining a former employee from violating the non-competition provisions of his employment agreement.  The portion of the preliminary injunction enjoining the former employee's performance of services similar to those he provided while employed as a veterinarian by his former employer was to remain in effect until trial on the merits of the plaintiffs' claims, unless it was subsequently modified or dissolved.  Now, several months premature of the expected trial date, the defendant seeks a modification of the preliminary injunction that will allow him to begin competing with the plaintiffs prior to the scheduled trial date.  In its June 1, 2005 order, this court found that equity required the issuance of the preliminary injunction in this case.  The question now before the court is whether equity also requires a modification of the preliminary injunction in light of subsequent developments.

## *I. INTRODUCTION AND FACTUAL BACKGROUND*

The procedural and factual background precipitating this controversy is discussed extensively in this court's prior ruling.  *See Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711 (N.D. Iowa 2005).  The court will therefore present here only a brief synopsis of the procedural and factual background pertinent to the current matter before the court.

### A. Procedural Background

On April 29, 2005, the plaintiffs in this action, Pro Edge, L.P. ("Pro Edge"), an Iowa limited partnership,[1] and Trans Ova Genetics, L.C.,[2] an Iowa limited liability company, filed a petition in the Iowa District Court for Sioux County, Iowa, against defendants Charles S. Gue, III, DVM ("Dr. Gue"), a former employee of Trans Ova Genetics, L.C., and Progenesis Embryo Transfer, Ltd. ("Progenesis"), a wholly-owned Montana corporation created by Dr. Gue. The plaintiffs' business includes embryo transfer services for cattle producers in several states, including Illinois, Iowa, Missouri, Montana and Oklahoma. The complaint was in five counts, but its chief concerns involved fears of disclosure of trade secrets and violation of a non-competition agreement supposedly signed by Dr. Gue.[3] On April 29, 2005, the Iowa District Court for Sioux County entered an *ex parte* temporary restraining order enjoining Dr. Gue from providing embryo transfer services including, but not limited to, in vitro fertilization to any individuals or entities that are cattle producers that have been customers of Trans Ova's

---

[1] The caption specifically lists Pro Edge, L.P., as doing business as Trans Ova Genetics, Inc.

[2] The case caption specifically lists Trans Ova Genetics, L.C., as formerly known as Trans Ova Genetics, Inc.

[3] Specifically, in Count I of the complaint, the plaintiffs seek injunctive relief enjoining the defendants from violating the non-competition provisions of Dr. Gue's employment contract; in Count II, the plaintiffs seek damages and injunctive relief for retention, use, and disclosure by the defendants of the plaintiffs' trade secrets; in Count III, the plaintiffs seek injunctive relief and damages for the defendants' intentional interference with contracts between the plaintiffs and their customers; in Count IV, the plaintiffs seek injunctive relief and damages for the defendants' intentional interference with prospective contracts; and in Count V, the plaintiffs seek injunctive relief and damages for the defendants' breach of the covenant of good faith and fair dealing.

Belgrade, Montana, office within the 12-month period prior to the date of Dr. Gue's separation from employment on April 8, 2005. The order stated that it would become effective upon the filing of a bond in the amount of $30,000 with the Clerk of the Iowa District Court for Sioux County and the issuance of a writ of injunction. The plaintiffs posted the necessary bond and the Writ of Injunction issued on April 29, 2005. The plaintiffs represent they provided notice of the temporary restraining order to Dr. Gue's counsel on May 1, 2005. However, they contend that Dr. Gue "evaded service" of the temporary restraining order until May 11, 2005.

On May 16, 2005, the defendants removed this action to this federal court. (Doc. No. 2). On May 18, 2005, the plaintiffs filed a Motion To Extend Temporary Restraining Order and Request For Hearing On Preliminary Injunction in which the plaintiffs sought both an extension of the *ex parte* temporary restraining order issued by the Iowa District Court for Sioux County, as well as a hearing on the accompanying motion for a preliminary injunction. (Doc. No. 3). On May 19, 2005, this court entered an order extending the temporary restraining order to and including May 24, 2005, and setting a hearing on the plaintiffs' Motion For Preliminary Injunction for May 24, 2005. (Doc. No. 4). On May 20, the defendants filed a Motion To Dismiss and Request For Hearing, in which the defendants alleged, among other arguments, that the court lacked personal jurisdiction over all of the named defendants.

Following the May 24, 2005, preliminary injunction evidentiary hearing, a number of troublesome legal questions remained outstanding. Accordingly, the court allowed the parties to submit, by letter brief, case law addressing the more complex legal questions before the court. Following the receipt of the parties' briefs, the court entertained oral argument on the plaintiffs' Motion For Preliminary Injunction and the defendants' Motion To Dismiss on May 26, 2005. On June 1, 2005, this court issued its Memorandum

Opinion and Order Regarding Plaintiffs' Motion For Preliminary Injunction; Defendants' Motion To Dismiss; and Preliminary Injunction. Essentially, with respect to the Defendants' Motion To Dismiss, the court's June 1, 2005, order granted the motion with respect to defendant Progenesis for lack of personal jurisdiction, thus leaving Dr. Gue as the sole remaining defendant in the controversy. The defendants' remaining arguments were denied. With respect to the plaintiffs' Motion To Extend Temporary Restraining Order and Request For Hearing on Preliminary Injunction, the court granted the plaintiffs' motion. Accordingly, the court entered a preliminary injunction, which enjoined the defendant, Dr. Gue, from performing any services similar to those he provided while employed at Trans Ova Genetics, L.C. (Doc. No. 18).[4] On July 10, 2005, Dr. Gue filed

---

[4]The terms of the preliminary injunction were as follows:

**WHEREAS**, this matter came before the court pursuant to the May 19, 2005, request of the plaintiffs for a preliminary injunction,

**AND WHEREAS**, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court finds that defendant Charles S. Gue, III, DVM, has been and will continue to violate the non-competition provisions of an employment contract between the plaintiffs and Dr. Gue, and that failure to enjoin such conduct would impose irreparable harm or injury or the threat of such irreparable harm or injury upon the plaintiffs, and upon further consideration of all other relevant factors,

**DEFENDANT CHARLES S. GUE, III, DVM,** is hereby **preliminarily enjoined** from performing *any* services similar to those he provided while employed at Trans Ova Genetics, L.C.—including, but not limited to, embryo transfer services and in vitro fertilization—within a 250-mile radius of any Trans Ova Genetics, L.C., facility or satellite office that was in existence as of April 8, 2005.

This preliminary injunction shall be binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active

(continued...)

a Motion To Amend Findings and Judgment and/or For Reconsideration and Request For Nonevidentiary Hearing (Doc. No. 21). The plaintiffs filed their Resistance To Motion To Amend and/or Reconsider on June 21, 2005 (Doc. No. 24). Prior to the court's ruling on Dr. Gue's Motion To Amend, the defendants filed a timely Notice of Appeal (Doc. No. 25) and corresponding Motion For Certification (Doc. No. 26) on June 30, 2005. On July 5, 2005, this court denied Dr. Gue's Motion To Amend Findings and Judgment and/or Reconsideration and Request For Nonevidentiary Hearing (Doc. No. 30). On this same day, the court also granted Dr. Gue's Motion For Certification (Doc. No. 31). Pursuant to the Trial Management Order (Doc. No. 46) filed on January 5, 2006, trial on this matter is set for June 26, 2006 (Doc. No. 46).

On November 4, 2005, Dr. Gue moved to modify the preliminary injunction by fixing a specific date, prior to the anticipated trial date, for the dissolution of the preliminary injunction (Doc. No. 42). The plaintiffs resisted Dr. Gue's motion by filing a Resistance To Motion To Modify Preliminary Injunction on November 10, 2005 (Doc. No. 43). Oral argument on Dr. Gue's Motion To Modify Preliminary Injunction and Request For Hearing was held on January 25, 2006. At the hearing on January 25, 2006,

---

[4](…continued)
concert or participation with them who receive actual notice of this order.

This preliminary inunction shall issue upon the posting by the plaintiffs herein of a bond, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure in the sum of thirty thousand dollars ($30,000.00).

This preliminary injunction shall remain in full force and effect until the trial of this matter or until this order is modified or dissolved by this or a reviewing court.

Preliminary Injunction, June 1, 2005 (Doc. No. 18).

Trans Ova was represented by Charles T. Patterson, Margaret Prahl and Joel Vos, of Heidman Redmond Fredregill Patterson Plaza Dykstra & Prahl in Sioux City, Iowa. Dr. Gue was represented by Richard H. Moeller of Berenstein Moore Berenstein Heffernan & Moeller, L.L.P., in Sioux City, Iowa. The motion for modification of the preliminary injunction is now fully submitted, and the court must decide the merits of the defendant's request.

## B. *Factual Background*

Trans Ova Genetics, Inc.,[5] hired Dr. Gue as an embryo transplant specialist at its Sioux Center, Iowa facility in 1990. During his tenure at Trans Ova Genetics, Dr. Gue executed an Employment Agreement that contained a non-compete clause, which essentially prohibited him from performing similar services within a 250-mile radius of any Trans Ova Genetics facility for one year following his separation from employment.[6] The

---

[5] For a detailed discussion of the changing corporate structure of the plaintiffs, see *Gue*, 374 F. Supp. 2d at 742-44. For the purposes of this opinion, it is sufficient to simply note that Pro Edge Ltd. used the fictitious name, Trans Ova Genetics, Inc., when conducting business. Pro Edge Ltd. later became the limited partner in Pro Edge L.P. On November 14, 2000, Pro Edge L.P. filed articles of incorporation with the Iowa Secretary of State to form Trans Ova Genetics, L.C., of which Pro Edge, L.P. was the sole member.

[6] Specifically, the agreement provided, in pertinent part, as follows:

> 5. <u>Non-Compete</u>. Dr. Gue agrees that he will not compete for a period of one year following the termination of his employment within a 250 mile radius of any Trans Ova facility or satellite office that is in existence at the time he terminates his employment with Trans Ova. Dr. Gue further acknowledges good and valuable consideration for this non-
>
> (continued...)

7

Employment Agreement further contained a choice of law provision that indicated the agreement was to be construed pursuant to the laws of the state of Iowa.[7]  Dr. Gue remained a loyal employee of Trans Ova Genetics, L.C. until early in 2005, at which time he began contemplating resigning his veterinary position with the company.  In late February, Dr. Gue approached an embryologist at the Belgrade, Montana, facility, and discussed whether she would leave Trans Ova Genetics, L.C. to work with him should his plans to terminate his employment with Trans Ova Genetics, L.C. and branch out on his own come to fruition.  In March 2005, Dr. Gue incorporated defendant Progenesis in Montana as a close corporation in which he is 75% owner, and his wife is 25% owner.  Thereafter, sometime in early March 2005, Dr. Gue contacted Korey Krull, Dr. Gue's direct supervisor at the time, as well as Chief Operations Officer of Trans Ova Genetics, L.C., and provided notice of his intent to terminate his employment with Trans Ova Genetics, L.C.  Dr. Gue solidified his resignation by following this conversation with a letter, dated March 16, 2005, which clearly articulated his present intent to terminate his employment and offered his services for the following two weeks should Trans Ova

---

[6] (...continued)

> compete agreement.  He further acknowledges that good and valuable consideration is included in his annual compensation.  Dr. Gue further acknowledges and agrees that a one year limitation and a 250 mile radius restriction is a reasonable period of time and a reasonable restriction.  This limitation [sic] but not limited to activities that he may perform as an employee, partner, veterinarian, or consultant for services similar to those performed for Trans Ova.

[7] In its June 1, 2005 order, this court previously determined that Iowa's choice of law rules required application of Iowa law to the merits of this case.

Genetics, L.C., desire him to stay on through that period. Dr. Gue admittedly timed his resignation in coordination with the height of breeding season—April/May/June of each calendar year—such that he would have an immediate customer base for his services following his resignation from Trans Ova Genetics, L.C.

Dr. Gue's March 16, 2005 letter immediately precipitated discussions among Trans Ova Genetics, L.C., and Dr. Gue regarding the possibility of Dr. Gue staying on as an independent contractor. On Trans Ova Genetics, L.C.'s part, the retention of Dr. Gue on *any* basis—independent contractor or otherwise—was contingent on Dr. Gue's execution of another employment agreement containing a covenant not to compete. As Dr. Gue was not willing to enter into any agreement containing such a restrictive covenant, the negotiations subsided. On April 8, 2005, Dr. Gue resigned his employment with Trans Ova Genetics, L.C. The Trans Ova Genetics, L.C., embryologist whom Dr. Gue initially had approached about leaving the company also resigned her employment and went to work for Dr. Gue at Progenesis.

Following his resignation, Dr. Gue immediately began providing embryo transfer services to Trans Ova Genetics, L.C.'s customers—including some of Trans Ova Genetics, L.C.'s largest and most lucrative customers. Following his separation from Trans Ova Genetics, L.C., Dr. Gue picked up embryos from Trans Ova Genetics, L.C., for Stevenson's Diamond Dot on April 12, 2005, and Riverbend on April 14, 2005—two of Trans Ova Genetics, L.C.'s former clients. Additionally, on April 11, 2005, Dr. Gue took out an internet ad which advertised Progenesis as offering services identical to those offered by Trans Ova Genetics, L.C. On April 20, 2005, counsel for the plaintiffs sent Dr. Gue a letter indicating that his current activities were in violation of the non-compete clause of the 1996 Agreement, and requested that he cease and desist providing competing services to Trans Ova Genetics, L.C.'s customers. Preliminary Injunction Evidentiary

Hearing, Exh. C. Dr. Gue, via his Montana counsel, responded by letter dated April 22, 2005, indicating that the 1996 Agreement was unenforceable under Montana law, and that Dr. Gue's activities were not violative of any enforceable contracts or agreements. Preliminary Injunction Evidentiary Hearing, Exh. D. Dr. Gue and Progenesis continued providing competing services—to Trans Ova Genetics, L.C.'s customers and possibly others within the 250-mile radius of the Belgrade, Montana area—through May 18, 2005.[8] With this background in mind, the court now turns to an analysis of the pertinent issues raised in the pending motions.

## II. LEGAL ANALYSIS

The court considered extensively the standards applicable to the issuance of a preliminary injunction in this case in its prior ruling granting the plaintiffs' application for a preliminary injunction. *See Gue*, 374 F. Supp. 2d at 734-35 (reciting the applicable standards); *see also id.* at 747-52 (applying the relevant standards). The first question in this case, however, is what standards are applicable to the modification or vacation of a preliminary injunction already issued by the district court.

---

[8]Gue testified at the preliminary injunction hearing that the reason he continued to provide similar services even after he was served with the Iowa District Court for Sioux County's temporary restraining order on May 11, 2005 was because he could not, professionally or ethically, discontinue certain work that was pending at that time until he was able to find others to provide "cover."

## A. Standards For Modification Of A Preliminary Injunction[9]

Generally, a district court has the authority to modify its injunctive decrees where changed circumstances require modification so as to effectuate the purposes underlying the initial grant of relief. *See Fed. R. Civ. P.* 60(b)(5); *see also Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384 (1992) ("Modification . . . may be warranted when changed factual conditions make compliance with the decree substantially more onerous.") *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 248 (1968) (noting a district court has the authority to modify a decree according to "changed conditions"); *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions . . . ."); *Rockwell Graphic Sys., Inc. v. DEV Indus.*

---

[9] In its June 1, 2005 order, this court concluded that it should apply federal, rather than Iowa law, to the determination of whether a preliminary injunction should issue because federal courts are to apply their own rules of civil procedure, including Rule 65, which incorporates traditional federal equity practice for the issuance of preliminary injunctions. Neither party has challenged this determination in their current motions before the court. Accordingly, this court will also apply federal law when addressing modification of the preliminary injunction. *See, e.g.*, *Uncle B's Bakery, Inc. v. O'Rourke*, 938 F. Supp. 1450, 1459-60 (N.D. Iowa 1996) (applying federal standards in a diversity case where modification of a preliminary injunction was at issue). Furthermore, the court concludes that, as a practical matter, application of federal rather than Iowa law to the question before the court would not be "outcome determinative," as Iowa courts appear to employ roughly the same standards of equity as do federal courts of this circuit to modification of a preliminary injunction. *See Bd. of Ed. v. Bd. of Ed.*, 151 N.W.2d 465, 467-68 (Iowa 1967) (upholding district court's refusal to vacate a temporary injunction based on equities of the parties' situations); *Johnston v. Kirkville Indep. Sch. Dist.*, 39 N.W.2d 287, 288 (Iowa 1949) (implying, based on the cases cited therein, that equity mandates whether modification of preliminary injunction is warranted); *cf. Bear v. Iowa Dist. Court*, 540 N.W.2d 439, 441 (Iowa 1995) (stating the standards with respect to modification of a permanent injunction).

*Inc.*, 91 F.3d 914, 920 (7th Cir. 1996) (noting a court may modify scope of an injunction in order to adapt to changed circumstances); *Favia v. Ind. Univ.*, 7 F.3d 332, 337 (3d Cir. 1993) (indicating modification of a preliminary injunction is proper only when a change of circumstances has rendered the continuance of the original injunction inequitable); *United States v. Snepp*, 897 F.2d 138, 141 (4th Cir. 1990) (stating a modification of an injunction may be granted where warranted by changed law or circumstances); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1030 (9th Cir. 1985) ("When dealing with its equitable powers, a court possesses the intrinsic power to adapt the injunction to meet the needs of a 'new day.'") (quoting *Atlas Scraper and Eng'g Co. v. Pursche*, 357 F.2d 296, 298 (9th Cir. 1966)); *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 430 (8th Cir. 1983) (stating that modifications can be made in light of subsequent changes in the facts or the law or for any other good reason). Either a change in the applicable law or a change in the facts of the case may constitute a "change in circumstances." *See Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) ("There is also no dispute but that a sound judicial discretion may call for modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed. . . ."); *Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999) (noting the court has the authority to alter an injunction based in light of changes in the law or the circumstances); *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (citing *Sys. Fed'n No. 91*, 364 U.S. at 647); *Snepp*, 897 F.2d at 141 (stating modification of injunction may "be granted where warranted by a change in the law or the circumstances"); *Movie Sys.*, 717 F.2d at 430 (stating a district court may make any modifications to an injunction that are equitable in light of changed facts or applicable law); *Civic Ass'n of Deaf of N.Y. City, Inc. v. Giuliani*, 970 F. Supp. 352, 358

12

(S.D.N.Y. 1997) (noting a court may modify an injunction when there has been change in the law or facts and modification is equitable); *Uncle B's Bakery*, 938 F. Supp. at 1459 (citing *Movie Sys.*, 717 F.2d at 430; *McDonald v. Armontrout*, 908 F.2d 388, 390 (8th Cir. 1990)). "An injunction is an ambulatory remedy that marches along according to the nature of a proceeding. It is executory and subject to adaptation as events may shape the need, except where rights are fully accrued or facts so nearly permanent as to be substantially impervious to change." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984).

The Eighth Circuit Court of Appeals has also provided guidance for the district court's exercise of its discretion when considering whether to modify a preliminary injunction. *See, e.g.*, *Omaha Indem. Co. v. Wining*, 949 F.2d 235, 239-40 (8th Cir. 1991). In *Omaha Indemnity Co. v. Wining*, the Eighth Circuit noted that a district court "' is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law.'" *Id.* at 239 (quoting *Movie Sys.*, 717 F.2d at 430 and citing *McDonald*, 908 F.2d at 390). Thus, in *Wining*, the Eighth Circuit affirmed a district court's strengthening of a preliminary injunction where the defendant's subsequent conduct suggested the defendant intentionally ignored or sought to circumvent the original preliminary injunction. *Id.* Similarly, in *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 670-71 (8th Cir. 1987), the Eighth Circuit affirmed the modification of a preliminary injunction that originally enjoined the defendant from marketing a body spray that infringed on the plaintiff's trademark by creating a likelihood of consumer confusion between the parties' products. *Id.* at 667. The district court modified the preliminary injunction to allow the body spray to be sold, provided that a disclaimer sticker was securely and prominently affixed to the

body of the container. *Id.* at 669-70. The Eighth Circuit affirmed the district court's modification because the disclaimer sticker was sufficient to cure any confusion the court had previously found to be created by the body spray container. *Id.* at 671.

While a party seeking to modify a *final* injunctive decree must meet a heavy burden, *see, e.g., Humble Oil & Refining Co. v. Am. Oil Co.*, 405 F.2d 803, 812-13 (8th Cir. 1969), such a strong showing is not necessary, at least within the Eighth Circuit, when a *preliminary* injunction is at issue. *See Movie Sys.*, 717 F.2d at 430. In *Movie Sys., Inc. v. MAD Minneapolis Audio Distributors,* the Eighth Circuit Court of Appeals specifically rejected an argument based on prior decisions that the modification of a preliminary injunction requires "a strong showing of new conditions and circumstances making the original injunction oppressive," holding instead that no such strict standard is authorized. *Movie Sys.*, 717 F.2d at 430. In addition to modifications that "are equitable in light of subsequent changes in the facts or the law," the court added that modifications might be made "for any other good reason." *Id.* (citing generally 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 65.07 (2d ed. 1982), and [Interim Binder] *Federal Procedure, Lawyers Edition* § 47.61 (1981)). Keeping these standards in mind, the court will now proceed to address the merits of the parties' respective arguments.

### B. Arguments Of The Parties

#### 1. The defendant's arguments for modification

In his Motion To Modify Preliminary Injunction, Dr. Gue contends that "good reason" warrants modification of the court's June 1, 2005, preliminary injunction. Somewhat more specifically, Dr. Gue asserts that the dissolution date of the

14

preliminary injunction should be altered to reflect a date-certain prior to the commencement of the trial on the merits, which is anticipated to occur on June 26, 2006. In support of this contention, Dr. Gue notes that the Employment Agreement executed by the parties only operated to preclude him from engaging in similar services for one-year after his termination with Trans Ova Genetics, L.C. Dr. Gue points out it is undisputed that he terminated his employment with Trans Ova Genetics, L.C. on April 8, 2005. Therefore, Dr. Gue avers equity demands that this court modify the preliminary injunction to expire on April 8, 2006, pursuant to the express terms of the one-year non-compete provision enunciated in the parties' Employment Agreement. Based on the current anticipated trial date of June 26, 2006, Dr. Gue contends the original terms of the preliminary injunction impermissibly extend the one-year post-employment time period in which Dr. Gue agreed he would not compete with Trans Ova Genetics, L.C.[10]

Although Dr. Gue recognizes in his supporting brief that a court sitting in equity may, under certain circumstances, extend the term of an employee's post-employment restriction beyond its given expiration, Dr. Gue argues that such a judicial extension is not warranted based on the facts of this case because it is not necessary to accomplish justice between the parties. Anticipating the plaintiffs' argument in resistance, Dr. Gue preemptively avers that *Presto-X-Co. v. Ewing*, 442 N.W.2d 85 (Iowa 1989), a case in which the Iowa Supreme Court extended the term of a covenant not to compete, is distinguishable from the facts of the case at bar. Moreover, Dr. Gue argues that the

---

[10]At the time Dr. Gue filed his motion, a trial date had not been set. Dr. Gue's motion was premised upon the trial-ready date of May 2, 2006. Shortly after Dr. Gue filed this motion, the June 26, 2006, trial date was set. Accordingly, this is the date that will be utilized by the court in its discussion of this matter.

plaintiffs have an adequate at-law remedy and can be fully compensated in the form of monetary damages for any alleged breach of the covenant not to compete. Further relief, avers Dr. Gue, is not only unnecessary but also inequitable. Consequently, Dr. Gue contends the court should not employ its equitable powers to extend the term of the preliminary injunction beyond April 8, 2006, and requests that the expiration date of the preliminary injunction be modified to reflect accordingly.

## 2. *The plaintiffs' arguments in resistance*

In their Resistance To Defendant's Motion To Modify Preliminary Injunction, the plaintiffs first appear to argue that Dr. Gue has failed to demonstrate a modification is warranted. The plaintiffs assert that Dr. Gue has not alleged a change in the applicable law and that it is "questionable" whether the trial date alone constitutes a sufficient change in facts to warrant modification of the preliminary injunction. However, the crux of the plaintiffs' resistance focuses on whether equity demands an extension of the restraint period so as to accomplish full and complete justice between the parties.

Relying on *Presto-X*, the plaintiffs contend the facts of this case warrant the employment of a judicial extension of the covenant not to compete. First, the plaintiffs argue failure to extend the term of the covenant in this case would create an incentive for separated employees to violate the terms of their non-compete agreements. The plaintiffs argue that the Employment Agreement contractually obligated Dr. Gue to refrain from performing similar services for a one-year period. According to the plaintiffs, Dr. Gue did not honor this provision of the Employment Agreement until at least May 18, 2005, over a month after he officially terminated his employment with Trans Ova Genetics, L.C. The plaintiffs contend the defendant should not be rewarded

for violating the provisions of the restrictive covenant by being allowed to resume competing less than one year from the date he actually quit competing. The plaintiffs argue such a result would encourage former employees, and in particular, former employees involved in a seasonal industry, to violate non-compete provisions because an employee would essentially benefit from the period of noncompliance by not only reaping the profits from the breach, but also being allowed to credit such time toward the term of the covenant.

The plaintiffs further point out that the unique facts involved in this case warrant a judicial extension of the covenant. The parties in this case are involved in embryo transfer work. The plaintiffs assert this line of work is extremely seasonal, with nearly half of the sales occurring between the April to June breeding season. In 2004, the plaintiffs assert the months of April, May, and June accounted for 41.39% of the total sales to Trans Ova Genetics, L.C.'s key clients that were allegedly misappropriated by Dr. Gue. The plaintiffs focus on the fact that Dr. Gue performed similar services from his termination date of April 8, 2005 until May 18, 2005—nearly half of the 2005 breeding season. If the preliminary injunction is modified to expire on April 8, 2006, the plaintiffs argue Dr. Gue will have effectively evaded non-competing during the busiest months of the year and that the protections sought to be offered by the covenant to Trans Ova Genetics, L.C. will be rendered meaningless due to the fact Dr. Gue was only prevented from performing similar services during a mere six weeks of the breeding season, as opposed to an entire breeding season as contemplated under the covenant not to compete. Consequently, the plaintiffs argue equity demands that the preliminary injunction remain in effect until May 18, 2006, the date on which Dr. Gue

admitted he quit performing similar services.[11]

## C. Modification

As the preliminary injunction stands now, Dr. Gue is prohibited from engaging in competing employment with Trans Ova Genetics, L.C. until trial of this matter. Both parties, in essence, have requested a modification of the expiration date of the preliminary injunction. The defendant requests the injunction be modified to dissolve on April 8, 2006, whereas the plaintiffs request the injunction be continued until May 18, 2006. For reasons that follow, this court agrees with the plaintiffs.

### 1. Changed circumstances

At the outset, this court rejects the plaintiffs' implication that Dr. Gue must show a sufficient change in circumstances, meaning a change either in the facts or the law, in order to justify modification of a preliminary injunction. As stated in this court's review of the relevant standards for modification, in addition to a change in circumstances, a preliminary injunction may be modified for "other good reasons." *See Movie Sys.*, 717 F.2d at 430 (holding modification may occur for "any other good reason," in addition to changed circumstances); *see also Uncle B's Bakery*, 938 F. Supp. at 1464 (finding "other good reasons" to modify a preliminary injunction). Thus, the alleged lack of changed circumstances is not fatal to Dr. Gue's Motion To Modify Preliminary Injunction if other "good reasons" exist. In light of the fact that a

---

[11]The plaintiffs also filed their resistance in this matter before the trial date of June 26, 2006 was set. Therefore, the plaintiffs' resistance is premised upon the trial ready date of May 2, 2006. Thus, as the court did with the defendant, the court will utilize the June 26, 2006 trial date in its discussion of these matters.

preliminary injunction can be modified for any good reason, one of which may be a change in circumstances, the focus of a court's inquiry when determining whether modification of a preliminary injunction is warranted is not, as the plaintiffs suggest, whether a sufficient change in circumstances exists, but rather, whether a modification is equitable, *for any reason*, in order to effectuate justice between the parties. That the court's ultimate focus must be on the equities of any given case is bolstered by the fact that even in cases where a marked change in circumstances is demonstrated, the preliminary injunction is not modified unless it is equitable to do so. Thus, the court's focus, with respect to Dr. Gue's Motion To Modify, necessarily must involve weighing the competing equities at play in this case.

Moreover, even if this court accepted the plaintiffs' contention that Dr. Gue is required to show a change in circumstances before modification may occur, this court would conclude Dr. Gue has met his burden. At the time this court entered the preliminary injunction, a scheduling order had not been filed in this case. The finalization of the trial date beyond the expiration of the normal terms of the restrictive covenant constitutes a sufficient change in circumstances, especially in light of the fact that a strict standard need not be met in order to justify modification of a preliminary injunction. Accordingly, the determination of an anticipated date of trial, especially when the expiration of the preliminary injunction is dependent upon that date, could warrant alteration of the injunction at issue in the case, provided it is equitable to do so. Accordingly, this court will proceed to address whether equity demands a modification in this case.

## 2.    *Equity*

Dr. Gue argues that extension of the period in which he is prohibited from performing similar services would essentially rewrite the parties' agreement by creating a protected period upon which they had not agreed.  Further, Dr. Gue contends the plaintiffs may be fully compensated for the period he allegedly violated the provisions of the non-compete clause through an award of monetary damages.  In the opinion of this court, this misstates the issue.  Dr. Gue was contractually obligated to refrain from competing with the plaintiffs for a period of one year from the date of his termination.  Presumably, the one-year period was utilized in order to ensure that the restrictive period encompassed an entire breeding season.  In the eyes of this court, equity would not be served by allowing Dr. Gue to essentially evade complying with the full term of the noncompetition agreement.  In essence, Dr. Gue is asking this court to credit the five weeks he violated the covenant not to compete toward the one year he agreed to refrain from performing similar services.  This court is of the opinion that it would be extremely inequitable to reward Dr. Gue for violating the provisions of the agreement.  This is particularly true under the facts of this case where Dr. Gue's resignation coincided with the commencement of the breeding season and his breach of the agreement enabled him to work during nearly half of what is considered the "busy season" in the industry.  If the court were to modify the preliminary injunction to reflect an expiration date of April 8, 2006, as proffered by the defendant, he will successfully evade his obligation to refrain from performing similar services for nearly a full breeding season—the very season the one-year covenant not to compete was presumably designed to protect— simply by timing his resignation to coincide with the busiest season of the year and subsequently breaching the non-compete agreement for the majority of that season.  Equity demands that employees not be rewarded for

breaching the terms of a covenant not to compete. When faced with similar facts, myriad other courts have determined that an extension of the restricted period is mandated by equity. *See Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371-72 (8th Cir. 1991) (extending the term of the covenant, in part, based on the defendant's breach of the covenant not to compete); *Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971) (holding grant of injunction beyond time provided for in employment agreement was proper in light of the fact the employee worked for competitor during portion of the agreed-upon term); *Padco Advisors, Inc. v. Omdahl*, 185 F. Supp. 2d 575, 578 (D. Md. 2002) (finding that the term in which employee agreed to not compete should begin on the date the employee ceased improper activity); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 290 S.E.2d 882, 886-87 (Va. 1982) (determining that employee should not be rewarded by his breach of a non-competition agreement and remanding the case to the district court so that the injunction could reflect prospective enforcement of the covenant in light of the defendant's breach) (citing *Capelouto v. Orkin Exterminating Co.*, 183 So.2d 532 (Fla. 1966); *Fullerton Lumber Co. v. Torborg*, 70 N.W.2d 585 (Wis. 1955)); *Presto-X*, 442 N.W.2d at 90 (exercising equitable powers to extend the restraint period so as to allow the employer to have the full benefit of its bargained-for period); *cf. Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 93 (Minn. 1979) (upholding the extension of an injunction as a remedy for a breach of the duty not to use confidential information, but not deciding whether the injunction could be issued as a remedy for the breach of the covenant not to compete).

The defendant asserts that the case primarily relied upon by the plaintiffs, *Presto-X*, is distinguishable from the facts of the case at bar. In *Presto-X*, a former employee of a pest control business breached the provisions of the parties' non-compete

agreement. *Presto-X*, 442 N.W.2d at 86. Initially, the district court denied Presto-X's requests for preliminary and permanent injunctions, finding that no breach of the restrictive covenant occurred. *Id.* at 86-87. On appeal, the Iowa Supreme Court reversed, but by the time the Iowa Supreme Court rendered its opinion, the two-year period of restraint, if measured from the date of the employee's termination, would have expired shortly after completion of the appeal. *Id.* at 89-90. In reversing the district court's denial of a permanent injunction, the Iowa Supreme Court exercised its equitable powers to extend the period of the former employee's post-employment restraint period. *Id.* at 90. In doing so, the Iowa Supreme Court articulated three reasons that tipped the equities in favor of extending the restraint period:

> First, the integrity of the judicial process must be protected. Were we not to extend the restraint period, defendants in similar cases would be encouraged to inject delay into their litigation with the purpose of using up as much of the original restraint period as possible. Allowing judicial extension of the restraint period will deter delays intended for such a purpose. We have no evidence that Ewing intended any delay here, but, as noted above, the original restraint period in this case will expire shortly after this appeal. Even if Ewing did not intend any undue delay, it would be unfair for him to benefit from the normal delays of the judicial process.
>
> Second, for the same reasons, we think a time extension is necessary to protect the usefulness of such restrictive covenants. Ewing's case is a good example of how the effective restraint period of a restrictive covenant can become sharply attenuated by delays that are either inherent in the judicial process or intended by the defendant.
>
> Third, the extra restraint time is necessary to give Presto-X an opportunity to regain the customers it would not have lost had Ewing not violated the covenant. We have said

before that when an employee has had close contact with the employer's customers, as Ewing did, "it is only fair, on termination of [the] employment, [that] there be an interval when the new employee will be able to get acquainted with the customers." *Mutual Loan Co. v. Pierce*, 245 Iowa 1051, 1058, 65 N.W.2d 405, 409 (1954) (in "route cases," restrictions on former employees are often upheld). Presto-X deserves such an interval of time here to get reacquainted with the customers it lost to Ewing. We think one year is sufficient for that purpose.

*Id.* The defendant argues that the first two reasons articulated by the Iowa Supreme Court are wholly inapplicable to the facts of the case at bar. *See id.* Here, the defendant contends the plaintiffs have not been affected by the "inherent delays" of the judicial process. The defendant contrasts the facts of this case with the facts of *Presto-X* by pointing out that the plaintiffs in this case have received the benefit of all but five weeks of the fifty-two week covenant entered into by the parties, whereas the plaintiffs in *Presto-X*, absent an extension, would have only received the benefit of half of the two-year covenant's term. *See id.* at 89-90. For the reasons that follow, this court finds the defendant's arguments to be unpersuasive.

The first reason articulated in *Presto-X*—the integrity of the judicial process—is applicable to this case, albeit on a smaller scale than in *Presto-X*. The original Writ of Injunction that prevented Dr. Gue from performing similar services was issued by the District Court for Sioux County on April 29, 2005. However, Dr. Gue was not served with the Writ until May 11, 2005. Thus, Dr. Gue was able to compete with the plaintiffs for an additional two weeks due to delays in the judicial process. Although two weeks may seem trivial with respect to traditional business entities that have a steady stream of business throughout the calender year, two weeks under the

circumstances of this case are substantial. This is because the two-week period occurred during the height of the short breeding season, when nearly fifty-percent of the business is conducted. As in *Presto-X*, even if Dr. Gue did not intend any undue delay during the height of the breeding season, it would be unfair to allow him to take advantage of such delay. Further, allowing separated employees to take advantage of such judicial delays would provide an incentive to inject further delay into the judicial process, by evading service or through the employment of other such tactics. Such a result, in the opinion of this court, is undesirable. Accordingly, contrary to the defendant's assertions, the first reason enunciated in *Presto-X* is indeed pertinent to the facts of the case currently before this court.

Second, as in *Presto-X*, an extension in this case is necessary to protect the usefulness of restrictive covenants, although in a somewhat differing, yet more critical, context. In *Presto-X*, the court was primarily concerned with the erosion of the usefulness of restrictive covenants by delays as a result of the judicial system or intended by the defendant. *See id.* While this line of reasoning can also be applied to the two-week delay discussed in the preceding paragraph, a more critical application exists under the facts of this case. This controversy, as mentioned previously, deals with the highly-specialized and highly-seasonal area of embryo transfer in livestock. Due to the seasonal nature of the industry, Dr. Gue was essentially able to evade the terms of the restrictive covenant by breaching the covenant only during the busiest season of the industry. Thereafter, Dr. Gue complied with the terms of the covenant, but the benefit to Trans Ova Genetics, L.C. was arguably negligible since over half of the yearly business typically occurs during the months Dr. Gue continued to compete with his former employer. Without application of a judicial extension of the restrictive period, any employee working in a highly specialized and seasonal industry would have

24

an incentive to act just as Dr. Gue acted, thereby suffering little, if any, repercussions as a result of the non-compete agreement. To illustrate, the timing of Dr. Gue's resignation and subsequent breach of the non-compete agreement would be comparable to an employee quitting a Christmas speciality shop two weeks before December 25th, competing throughout the holiday season, and then claiming the employer wasn't harmed because the former employee only breached the agreement for two weeks. Obviously, this court does not want to judicially endorse such an erosion of the effectiveness of covenants not to compete.

Finally, as noted in *Presto-X*, the extra restraint time is necessary to give Trans Ova Genetics, L.C. an opportunity to regain the customers it lost. *See id.* Dr. Gue argues the plaintiffs have had ample opportunity to regain any lost business. This court disagrees, again, based on the highly seasonal line of work in which the parties are involved. Dr. Gue began competing with Trans Ova Genetics, L.C. almost immediately at the beginning of the 2005 breeding season and continued to compete until mid-season. Dr. Gue now requests that he be allowed to begin competing with Trans Ova Genetics L.C. immediately at the beginning of the 2006 breeding season. However, this would be extremely inequitable to Trans Ova Genetics, L.C. because it will have lost the opportunity to recapture the business originally pirated by Dr. Gue at the beginning of the 2005 breeding season, which included some of Trans Ova Genetics, L.C.'s most elite customers. Accordingly, this court finds that *Presto-X*, in contravention to the arguments asserted by Dr. Gue, lends credence to this court's conclusion that a judicial extension of the restraint period is warranted in this matter.

Further, this court rejects Dr. Gue's argument that the plaintiffs can adequately be compensated through the award of monetary damages. While it is true that the plaintiffs may be compensated future losses that were caused by Dr. Gue's alleged

breach of the noncompetition agreement, such a monetary award will only compensate for the customers and profits that the plaintiffs already lost. Monetary damages, however, are not available to protect against the loss of any additional customers that may result if Dr. Gue is permitted to begin competing with Trans Ova Genetics, L.C. prior to fulfilling the one year term he was obligated to refrain from competing. Without requiring Dr. Gue to complete the full term agreed upon by the parties, it is highly probable that Trans Ova Genetics, L.C.'s clientele base will be further eroded. This distinction between compensating an employer for customers it has already lost and protecting an employer from the loss of additional customers has been previously articulated by the Eighth Circuit in *Overholt Crop Insurance Service Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991). There, the court rejected a similar argument advanced by the defendant-employee, although in the context of a permanent, as opposed to a preliminary injunction. *Travis*, 941 F.2d at 1371. In *Overholt*, an insurance agency brought an action against its former sales representative for wrongfully acquiring a substantial portion of the insurance agency's business, in contravention to the non-compete agreement entered into by the parties. *Id.* at 1365-66. Following a jury trial, the district court enjoined the employee from continuing to violate the restrictive covenant. *Id.* at 1371. On appeal, the employee argued that the employer could be adequately compensated in the form of legal remedies alone, and therefore, a permanent injunction was superfluous. *Id.* In rejecting this argument, the Eighth Circuit stated:

> Appellants argue, however, that [the employer] has already been monetarily compensated for future damages and therefore an injunction is not necessary. We do not agree. When [the employer]'s customers defected to [the employee's competing agency], [the employer] not only lost

> that year's premiums but also lost the future renewal
> premiums of these same customers. The monetary award
> for future losses compensates [the employer] for the
> customers and the future renewal premiums that [the
> employer] already lost. Conversely, the permanent
> injunction protects [the employer] against the loss of any
> additional customers due to the illegalities of the defendants.
> Without an injunction, [the employer]'s clientele might be
> further eroded as a result of the defendants' predatory
> habits. Because of the distinction between compensating
> [the employer] for customers it has already lost and
> protecting [the employer] from the loss of additional
> customers, the appellants' argument fails.

*Id.* Likewise, in this case, although Trans Ova Genetics, L.C. can be compensated for customers it has already lost through legal remedies such as monetary damages, the plaintiffs still require protection from the loss of additional clientele in light of Dr. Gue's "predatory habits" of pirating Trans Ova Genetics, L.C.'s customer base. Without an injunction precluding Dr. Gue's competition for the entire restrictive period, Trans Ova Genetics, L.C.'s customer base would experience further attrition. Accordingly, equity demands the preliminary injunction continue until May 18, 2006—the date Dr. Gue admitted at the preliminary injunction hearing that he quit administering competing services with Trans Ova Genetics, L.C. Accordingly, the defendant's motion to modify is **granted** to the extent that the defendant requests an exact date of expiration, prior to the commencement of trial, be set. However, the defendant's motion is **denied** to the extent it seeks an expiration date prior to May 18, 2006. Rather, in the interest of equity, the preliminary injunction shall be modified to reflect an expiration date of May 18, 2006, one year from the date Dr. Gue admitted he quit performing competing services with Trans Ova Genetics, L.C. Accordingly, as

modified the relevant portion of the preliminary injunction shall read as follows: "This preliminary injunction shall remain in full force and effect until May 18, 2006, or until this order is modified or dissolved by this or a reviewing court."

### III.  CONCLUSION

For the foregoing reasons, Dr. Gue's Motion To Modify Preliminary Injunction And Request For Hearing is **denied in part and granted in part**.  The Preliminary Injunction is hereby modified to expire on May 18, 2006, pursuant to Dr. Gue's own admissions during the preliminary injunction hearing.  However, although the court's ruling today extends the preliminary injunction's expiration date to May 18, 2006, the court notes that the future viability of this ruling is questionable in light of the defendant's recently-filed and argued Motion for Partial Summary Judgment (Doc. No. 45), which potentially may result in further modification or dissolution of the preliminary injunction.

**IT IS SO ORDERED.**

**DATED** this 31st day of January, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT
COURT
NORTHERN DISTRICT OF IOWA