## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| PRO EDGE L.P. d/b/a TRANS OVA GENETICS, INC. and TRANS OVA GENETICS, L.C. f/k/a TRANS OVA GENETICS, INC.,, <br><br>  Plaintiffs, <br><br> vs. <br><br> CHARLES S. GUE, III, DVM, <br><br>  Defendant. | No. C05-4068-MWB <br><br> **MEMORANDUM ORDER AND OPINION REGARDING DEFENDANT'S MOTION TO EXECUTE UPON INJUNCTION SECURITY AND ADDITIONAL DAMAGES** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B. Is Dr. Gue's Motion Premature?* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. Are Dr. Gue's Damages Limited To The Amount Of The Bond?* . . . . . . 9
    *D. Did Dr. Gue Fail To Mitigate His Damages?* . . . . . . . . . . . . . . . . . . 11
    *E. What Is An Equitable Award?* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *F. Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

This lawsuit was birthed out of alleged violations of a covenant not to compete contained in an employment agreement between the defendant, Dr. Charles M. Gue, III, D.V.M., and the plaintiffs, former employers of Dr. Gue. Although the parties experienced many years of harmonious coexistence in the highly specialized fields of cattle embryo transfer services and in vitro fertilization, the symbiotic relationship apparently became tumultuous following Dr. Gue's decision to abort his employment with the plaintiffs and begin a fledgling company, specializing in the same fields, of his own. Suffice it to say, the this controversy has repeatedly impregnated the court with myriad issues—all of which have been as legally and factually complex as the subject matter from which they stem. In keeping with the prior precedent of this lawsuit, the current issue before the court promises to deliver yet another unique interaction between the facts and the law.

## I. INTRODUCTION AND BACKGROUND

The procedural and factual background for this lawsuit is discussed extensively in this court's March 7, 2006, ruling, which granted summary judgment in favor of Dr. Gue, with respect to Count 1 of the plaintiffs' complaint. *See generally Pro-Edge, L.P. v. Gue*, 419 F. Supp. 2d 1064 (N.D. Iowa 2006). The court will therefore present here only a brief synopsis of the procedural matters arising since the court granted partial summary judgment.

On March 7, 2006, this court issued its ruling with respect to the Dr. Gue's Motion For Partial Summary Judgment And Motion To Dissolve Preliminary Injunction granting summary judgment with respect to Count I only and dissolving the previously issued preliminary injunction, which prevented Dr. Gue from performing similar services within

a 250-mile radius of any Trans Ova facility (Doc No. 53). Essentially, this court held that neither of the plaintiffs was entitled to enforce the covenant not to compete because the agreement had not been properly assigned during the transformation and restructuring that occurred during Pro-Edge Ltd.'s metamorphosis into Pro-Edge, L.P. On March 17, 2006, the plaintiffs filed a Motion To Amend And Reconsider And Request For Hearing (Doc. No 55). On March 29, 2006, Dr. Gue resisted the plaintiffs' Motion to Amend And Reconsider (Doc. No. 56) and simultaneously filed a Motion To Execute Upon Injunction Security And Additional Damages (Doc. No. 57).[1] The plaintiffs resisted Dr. Gue's motion on April 13, 2006 (Doc. No. 58). On April 26, 2006, this court summarily denied the plaintiffs' Motion To Amend And Reconsider (Doc. No. 59). Subsequently, on May 2, 2006, the plaintiffs' requested certification for interlocutory appeal on the issue of whether summary judgment in favor of Dr. Gue was proper with respect to Count 1 of the plaintiffs' complaint (Doc. No. 62). Dr. Gue filed a resistance to the plaintiffs' Motion For Certificate of Appealability on May 5, 2006 (Doc. No. 67). On this same date, Dr. Gue filed a Motion For Attorney Fees And Expenses (Doc. No. 66), in which he requested attorney fees be awarded to his counsel, based on his prevailing on the merits of Count 1. On May 15, 2006, this court granted the plaintiffs' Motion For Certificate Of Appealability on the issue of whether summary judgment was proper and stayed the matter during the pendency of any such interlocutory appeal (Doc. No. 69). On July 12, 2006, however, the Eighth Circuit Court of Appeals denied the plaintiffs' petition to file an interlocutory appeal (Doc. No. 79). Based on this court's previous order, which stayed the matter only while the interlocutory appeal was pending, following the Eighth Circuit Court of

---

[1]The defendant's motion is actually entitled "Defendant's Motion To Execute Upon Injunction *Secutity* And Additional Damages." (emphasis added). The court presumes this is merely an unfortunate typographical error.

Appeals's denial of the plaintiffs' petition, the controversy was allowed to again proceed in the normal course in this court. Accordingly, a hearing was held on both of Dr. Gue's outstanding motions—his Motion To Execute Upon Injunction Security And Additional Damages and his related Motion For Attorney Fees And Expenses—on August 21, 2006, at 11:00 a.m. At the hearing, Trans Ova was represented by Charles T. Patterson, Margaret Prahl and Joel Vos, of Heidman Redmond Fredregill Patterson Plaza Dykstra & Prahl in Sioux City, Iowa. Dr. Gue was represented by Richard H. Moeller of Berenstein Moore Berenstein Heffernan & Moeller, L.L.P., in Sioux City, Iowa. However, the hearing was continued in order to allow Dr. Gue to testify. The matter was reconvened on August 28, 2006, and accordingly, Dr. Gue was examined by parties. As the matter is fully submitted and the court is now in a position to make its determination, the court will proceed to issue its decision.

## II. LEGAL ANALYSIS

### A. *Applicable Law*

Rule 65(c) of the Federal Rules of Civil Procedure requires the posting of security by an applicant for an injunction to make funds available "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined, and that is suffered injury as a result of the injunction." *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988), *abrogated on other grounds*, *Holdin v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992). The bond requirement is significant for at least two reasons. First, the defendant who has been wrongfully enjoined has no recourse for damages in the absence of a bond. *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *Cagan v. Mutual Benefit*

*Life Ins. Co.,* 28 F.3d 654, 656 (7th Cir. 1994) (stating that "in all but exceptional cases the lack of an injunction bond means the unavailability of damages for wrongful injunction" and finding no such exceptional case where the enjoined party "did not remind the district court of the need for a bond under *Fed. R. Civ. P.* 65(c), did not ask [the appellate court] to stay the injunction, and to this day has not attempted to quantify the damages from the delay [caused by the injunction]"). The second reason for the bond requirement is that, because a preliminary injunction proceeding is both expedited, resulting in only provisional findings of fact, and interlocutory, there is a higher chance that the district court will err in granting the preliminary injunction. *Clark v. K-Mart,* 979 F.2d 965, 968 (3d Cir.1992); *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 210 (3d Cir. 1990); *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989).

The entitlement to recover against the bond generally depends upon whether it is ultimately determined that the enjoined party in fact had the right all along to pursue the enjoined conduct. *See, e.g., Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir. 1994) ("We hold today that a party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing."); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1054 (2d Cir. 1990) ("A party has been 'wrongfully enjoined' under *Fed. R. Civ. P.* 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act."); *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) ("The enjoined defendant may recover on the bond if a court later determines that it was 'wrongfully enjoined.'"). Whether a party enjoined by a preliminary injunction is entitled to damages when a permanent injunction is denied is within the court's discretion. *Alabama ex rel. Siegelman v. United States EPA,* 925 F.2d

5

385 (11th Cir. 1991). However, a court's decision to depart from Rule 65's preference in favor of recovery must be supported by a good reason. *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir. 1983). One such good reason for denying recovery is a defendant's failure to mitigate damages. *Id.*

The court in *Nintendo of America., Inc. v. Lewis Galoob Toys, Inc.*, noted that the proper question under rule 65(c) is whether the party seeking damages as the result of the injunction had been "wrongfully enjoined," which is the language of the rule itself, not the language employed by some courts awarding damages against the bond where the preliminary injunction had purportedly been "wrongfully issued." *Compare Nintendo,* 16 F.3d at 1036 n.4 (A court that complies with the applicable law in issuing a preliminary injunction does not "wrongfully" issue it.); *Continuum Co., Inc.,* 873 F.2d at 803 ("wrongfully enjoined" standard), *with National Kidney Patients Assoc.,* 958 F.2d at 1134 ("As to damages, a defendant injured by a *wrongfully issued* preliminary injunction is presumptively entitled to recovery on the injunction bond." (emphasis added). The purpose of the "wrongfully enjoined" standard is essentially twofold: "(1) to discourage parties from requesting injunctions based on tenuous legal grounds; and (2) to assure judges that defendants will be compensated for their damages if it later emerges that the defendant was wrongfully enjoined." *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.l3d 629, 631 (9th Cir. 1996). This standard "provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." *Nintendo*, 16 F.3d at 1037; *see Newspaper & Periodical Drivers'*, 89 F.3d at 634. The amount of damages recoverable on an injunction bond, however, is limited to those losses that actually and proximately resulted from the imposition of the injunction itself, as opposed to litigation expenses independent

6

of the injunction. *Matek*, 862 F.2d at 733.

### B. Is Dr. Gue's Motion Premature?

The plaintiffs first contend Dr. Gue's motion to execute the bond is premature. Essentially, the plaintiffs argue a motion to recover on an injunction bond is only proper after a final judgment has been entered in favor the party enjoined on each of the Counts asserted in the complaint. In their brief, the plaintiffs aver that "[p]revailing on any of the counts of the petition could entitle the Plaintiffs to the requested equitable relief and defeat Defendant's claim on the bond." Unfortunately, the plaintiffs' argument defies both the case law and logic. The plaintiffs overlook the fact that although they may have requested preliminary and/or permanent injunctive relief with respect to Counts Two through Five, either preliminary injunctive relief was not sought on those counts or sufficient evidence was not presented during the preliminary injunction hearing because preliminary injunctions on those grounds were never obtained. The only preliminary injunction that has been issued throughout the course of this lawsuit pertained exclusively to Count One. Therefore, Dr. Gue has only been enjoined, up until this point, from violating the provisions of his covenant not to compete. The plaintiffs cannot evade liability by confusing the relief that was requested in their complaint with the relief that was actually obtained in this case. Accordingly, contrary to the plaintiffs' assertions, the simple fact that injunctive relief was requested, but never obtained with respect to the other counts asserted in the complaint, does not somehow justify the injunction that was actually issued, which prevented Dr. Gue only from violating the provisions of the covenant not to compete.

It is true, that before a party may execute on a security bond, that a decision with respect to the merits of the controversy must be reached. This policy exists because of the

distinction between the granting or setting aside of a preliminary injunction, which is made on an abbreviated record, and the ultimate outcome of a case, which is made after a full trial on the merits. Hence, in order to recover, a party seeking to execute on a bond must demonstrate an entitlement to engage in the enjoined activity. Thus, where final judgment includes injunctive relief there is no basis for awarding damages because the party did not have the right to take the actions that were enjoined, regardless of whether the preliminary injunction was previously set aside. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 315 & n.2 (1999); *see also Olin Water Servs. v. Midland Research Labs., Inc.*, 774 F.2d 303, 307 (8th Cir. 1985). Here, however, a final resolution of *all* the issues is not necessary in order to determine if Dr. Gue was wrongfully enjoined because the preliminary injunction that was obtained only related to Count One and the covenant not to compete. This issue, at least with respect to Count One, has been fully resolved by this court's grant of partial summary judgment whereby it concluded the plaintiffs did not have the right to enforce the agreement because said agreement had not been properly assigned to either of the plaintiffs in this controversy. This conclusion is bolstered by the Eighth Circuit Court of Appeals's succinct denial of the plaintiffs' petition for permission to file an interlocutory appeal. Thus, it is clear that Dr. Gue has been wrongfully enjoined from performing similar services within a 250-mile radius of any Trans Ova facility because the record produced at summary judgment revealed he had, at all times, the right to compete with Trans Ova Genetics. *See Blumenthal*, 910 F.2d at 1054. Although Dr. Gue may later be enjoined from *different* activities based on the remaining counts of the plaintiffs' complaint, this possibility does not somehow remedy, as the plaintiffs seem to assert, the fact that Dr. Gue was wrongfully enjoined from competing with the plaintiffs within a 250-mile radius of any Trans Ova

Genetics facility.[2] Accordingly, this court concludes that Dr. Gue's motion is not premature and that he is entitled to execute the bond based on the fact he was wrongfully enjoined from performing similar services within 250 miles of any Trans Ova Genetics facility.[3]

### C. Are Dr. Gue's Damages Limited To The Amount Of The Bond?

The plaintiffs next aver that Dr. Gue's damages are limited to the amount of the bond—in this case, $30,000.00. Contrarily, Dr. Gue contends he is entitled to an amount in excess of the bond and requests an award of $116,000.00 in damages. The plaintiffs correctly point out that the majority of the federal circuit courts of appeals have held that the damages recoverable by a wrongfully enjoined party are generally limited to the

---

[2]It behooves the court to note that all five counts of the plaintiffs' petition are independent of one another. For example, Dr. Gue could still disclose trade secrets even though he was enjoined from competing with Trans Ova Genetics. Likewise, the remaining counts alleged in the complaint could have also been violated independent of Dr. Gue's ability to compete within a 250-mile radius of any Trans Ova facility. Conversely, Dr. Gue could have competed within 250 miles of a Trans Ova Genetics facility and not been in violation of Counts Two through Five. Accordingly, these issues are independent and mutually exclusive, not interdependent as the plaintiffs' argument suggest, and Dr. Gue, regardless of the outcome on the remaining counts, could have lawfully competed with Trans Ova Genetics within a 250-mile radius of its facilities.

[3]The plaintiffs also assert, relying on a South Carolina Court of Appeals' case, that if an appeal is pending, a motion to execute on a bond is premature. *See Martin v. Paradise Cove Marina, Inc.*, 559 S.E.2d 348, 351 (S.C. Ct. App. 2001). There is no reason to adopt this line of reasoning, in the eyes of this court. This is so because a stay of proceedings with respect to the enforcement of the judgment can easily remedy this situation and be issued in the event an appeal is pursued, as the court did in this controversy. Additionally, the Eighth Circuit has since denied the plaintiffs' pending petition for interlocutory appeal and consequently, no appeal is pending at this time.

amount of the bond. *See Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Airlines*, 925 F.2d 6, 10 (1st Cir 1991); *Blumenthal*, 910 F.2d at 1056; *Sprint Communications Co. v. Cat Communications Intern., Inc.*, 335 F.3d 235, 240 (3d Cir. 2003); *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 484 (4th Cir. 1970); *Continuum Co.*, 873 F.2d at 804; *Matek v. Murat*, 862 F.2d 720, 723 (9th Cir. 1988); *Adolph Coors Co. v. A & S Wholesalers, Inc.*, 561 F.2d 807, 813 (10th Cir. 1977). The plaintiffs also correctly enunciate the fact that the decisions of the Eighth Circuit Court of Appeals have not been entirely uniform. *Compare Int'l Ladies Garment Workers Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945) (stating that the "weight of authority in the Federal courts is that a recovery in excess of the maximum amount stipulated in a judicial bond is not permissible."), *with Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997) ("The $100,000 bond is a security device, not a limit on the damages the Rauh defendants may obtain against 3M if the facts warrant such an award."). However, this court is bound by the Eighth Circuit of Appeals's most recent guidance, regardless of that court's prior decisions and what other circuits have said with respect to the issue. Unfortunately for the plaintiffs, the Eighth Circuit Court of Appeals's most recent guidance indicates that a bond does not act as cap on the amount of damages that may be recovered in cases where such an award is warranted, and Dr. Gue may recover additional damages in excess of the bond amount if such an award is warranted under the facts of this case.[4] It is only within the province of

---

[4] In addition, the plaintiffs, relying on a footnote, imply that the Eighth Circuit Court of Appeals's decision in *Rauh Rubber* contradicts the United States Supreme Court decision of *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757 (1983). The plaintiffs assert *W.R. Grace* stands for the proposition that the damages recoverable by an improperly enjoined party are limited to the amount of the bond. However, a careful reading of the footnote relied upon by the plaintiffs reveals that the Court merely indicated

the Eighth Circuit to clarify or alter its position with respect to this issue, and as such, this court will dutifully follow the Eighth Circuit's most current discourse, which seemingly permits a wrongfully enjoined party to recover damages in excess of the bonded amount.

### *D. Did Dr. Gue Fail To Mitigate His Damages?*

The plaintiffs further contend this court should exercise its discretion to deny Dr. Gue recovery from the bond because he failed to mitigate his damages. In *Coyne Delany Co. v. Capital Development Board*, the Seventh Circuit Court of Appeals held that a proper basis for refusing to award damages from an injunction bond is where the defendant failed to mitigate damages. *Coyne-Delany*, 717 F.2d at 392. Although the case law exploring this concept within the injunction bond realm is dearth, it is a well-established principle of contract law that the duty to mitigate damages "imposes on the complaining party the obligation to exercise all reasonable diligence to lessen the damages caused . . . ." *Kuehl v. Freeman Bros Agency, Inc.*, 521 N.W.2d 714, 719 (Iowa 1994). The plaintiffs argue that Dr. Gue cannot show that he advertised his services outside of the 250-mile radius, nor did he bid on all available work outside the injunction radius and that as such, he should not be allowed to recover damages.

Unfortunately for the plaintiffs, however, the law presumes Dr. Gue is entitled to the injunction bond. *Newspaper & Periodical Drivers'*, 89 F.3d at 631, 634; *Nintendo*,

---

a party, in the absence of a bond, may not sustain an action for damages. However, the Court did not comment on whether the amount of damages was limited by the amount of the bond or whether additional damages could be sought. Thus, *W.R. Grace* is inapposite to the plaintiffs argument as it stands for the proposition that a prerequisite for a suit for damages, but does not speak to what amount may actually be recovered once the bond is instated. Consequently, *W.R. Grace* poses no bar to an award of additional damages to Dr. Gue, if warranted by the facts of the case.

16 F.3d at 1036. Consequently, this court's discretion in denying execution of the bond is extremely narrow. *See Nintendo*, 16 F.3d at 1037 (indicating it is only in rare cases that a party should not be required to suffer the execution of the preliminary injunction bond). The meager evidence presented by the plaintiffs at the hearing and alleged in their brief does not rebut the presumption in favor of execution.[5]

### E. What Is An Equitable Award?

In *Coyne-Delany*, the Seventh Circuit stated the following with respect to the factors which may guide a district court's award of injunction damages:

> In deciding whether to withhold costs or injunction damages, not only is the district court to be guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding them, but the ingredients of a proper decision are objective factors-such as the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit-accessible to the judgment of a reviewing court. In the spectrum of decisions embraced by the overly broad and unfortunately named abuse of discretion standard . . . the decision to deny costs and injunction damages is near the end that merges into the standard of simple error used in reviewing decisions of questions of law.

---

[5]It is noteworthy that the plaintiffs' good fiath in filing the motion for a preliminary injunction does not rebut the presumption executing the bond in Dr. Gue's favor. *See Nintendo*, 16 F.3d at 1037 ("Good faith in the maintenance of litigation is the standard expected of all litigants. That a party lives up to this standard simply means the party did what it ought to have done."). Indeed, as the Seventh Circuit Court of Appeals aptly recognized, a plaintiff's good faith "would be sufficient only if the presumption were against rather than in favor of awarding costs and damages on the bond to the prevailing party." *Coyne-Delany*, 717 F.2d at 392.

12

*Coyne-Delany Co., Inc..*, 717 F.2d at 392. Thus, in fashioning an award of damages, a district court essentially has the discretion to do equity. *See Newspaper & Periodical Drivers'*, 89 F.3d at 634; *Nintendo*, 16 F.3d at 1037. "The district court's computation of damages . . . is . . . insulated from review unless clearly erroneous." *Laborers Clean-Up Contract Admin. Trust Fund v. Uariarte Clean-Up Serv., Inc.*, 736 F.2d 516, 520 n.2 (1984); *see Lum*, 963 F.2d at 1170.

Here, it is with little difficulty, as this court mentioned previously, that it concludes Dr. Gue was wrongfully enjoined for a period of almost one year—from May 18, 2005 to March 7, 2006.[6] After consideration of all the evidence presented during the hearing and submitted by the parties in their respective briefs and in light of the equities at play in this case, this court finds that Dr. Gue has established that he has suffered lost profits in the amount of $116,084 as a result of being improperly enjoined. This amount represents in part the $39,231.81 in lost profits from embryo transfer services work that he was scheduled to perform after May 18, 2005. Dr. Gue also seeks lost profits in the sum of $77,518.19 for "speculative" work he would have performed but that was not yet scheduled. The court notes that while these damages are somewhat speculative in nature, Dr. Gue testified on cross-examination at the hearing on his motion that Boyd Henderson, another embryo transfer services provider from Pennsylvania, that Dr. Gue contacted to perform embryo transfer services after May 18, 2005, received approximately $90,000 for his work between May 18, 2005, and late December of 2005. It is clear from this testimony that Dr. Gue, instead of Dr. Henderson, would have enjoyed the bounty of that

---

[6]The court used the date of May 18, 2005, as the beginning date of Dr. Gue's wrongful enjoinder because that is the date Dr. Gue admitted he quit competing with the plaintiffs during the preliminary injunction hearing.

work but for the preliminary injunction be in effect. Therefore, the court finds that of the $77, 518.19 sought by Dr. Gue, he is entitled to $76,852.19 for lost profits he suffered as a result of being unable to perform embryo transfer services which had not yet been scheduled as of May 18, 2005.[7] Because the damages to Dr. Gue are in excess of the $30,000 bond, Dr. Gue is entitled to the execution of the entirety of the $30,000 bond.

The court further concludes that equity demands that Dr. Gue be fully compensated for the losses he sustained as a result of being improperly enjoined. Accordingly, this court has determined that Dr. Gue is entitled to $86,084 in additional damages above those covered by the $30,000 bond, for a total award of $116,084. In reaching this award, the court has taken into account the fact that the plaintiffs are solvent business entities with the present ability to reimburse Dr. Gue for his damages. However, a careful weighing of the equities in this case persuades the court that only one-half of the $116,084 in damages due Dr. Gue will be awarded at this time. Thus, Dr. Gue will only be awarded a total of $58,042, which represents $28,042 in addition to the $30,000 bond. The remainder of the award, $58,042, will be held in abeyance until resolution of the remaining claims against him in this case are determined at trial. Although the court is not in a position to judge the merits of plaintiffs' claims that Dr. Gue disclosed plaintiffs' trade secrets and intentionally interfered with existing and prospective contracts between the plaintiffs and their customers, the court notes that Dr. Gue did service plaintiffs' clients before the

---

[7]The court notes that the $76,852.19 figure reflects a reduction of $666, from the requested $77,518.19 figure, for money Dr. Gue earned building fences during the time that the preliminary injunction was in effect. The court has subtracted this amount, $666, from the figure sought by Dr. Gue, $77,518.19, because it would be inequitable to permit Dr. Gue to collect both for his wages building fences, work which the court finds he would not have incurred had he been able to devote himself to his work in the embryo transfer services field, and his lost profits from his embryo transfer services work.

preliminary injunction was entered, did bring in Dr. Henderson to service those same clients after the preliminary injunction was entered and is servicing those clients again now that the preliminary injunction has been lifted. Thus, the potential exists for a substantial judgment against Dr. Gue on the remaining claims in this litigation. Therefore, the court concludes that the equities of this case dictate that $58,042 be award to Dr. Gue at this time with the remaining $58.042 to be held in abeyance until final resolution of the other claims in this case.

### F. Attorney Fees

Dr. Gue also filed a Motion For Attorney Fees And Expenses. This court previously determined, in a lengthy opinion, that Iowa substantive law governs this controversy. *See Pro-Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 739 (N.D. Iowa June 1, 2005). Accordingly, the court will again turn to Iowa law to determine if Dr. Gue is entitled to an award of attorney fees based on his status as the prevailing party with respect to Count 1 of the plaintiffs' complaint.

Under Iowa law, attorney fees are not recoverable as court costs unless such fees are authorized by a statutory provision or an agreement between the parties. *See Humiston Grain Co. v. Rowley Interstate Transp. Co.,* 512 N.W.2d 573, 576 (Iowa 1994) (citing *Lickteig v. Iowa Dep't of Transp.*, 356 N.W.2d 205, 212 (Iowa 1984); *Dole v. Harstad*, 278 N.W.2d 907, 909 (Iowa 1979)). Here, Dr. Gue concedes in his Motion For Attorney Fees And Expenses and his corresponding brief that there is not an Iowa statutory provision that entitles him to such fees. Instead, Dr. Gue relies upon a contractual provision explicated in his 1996 Employment Agreement, which states as follows:

> 13. <u>Attorney Fees and Costs</u>. Breach of this agreement

> by either party which results in litigation shall include the right to receive attorney's fees for costs and expenses to the prevailing party.

Although at first blush, this provision may appear to be applicable to the situation at bar, Dr. Gue's argument overlooks the fact that this court previously determined that the 1996 Employment Agreement could not be enforced by the plaintiffs against Dr. Gue because the agreement was not properly assigned under the express terms of the contract to the plaintiffs by the original party to the agreement, Pro-Edge, Ltd., a predecessor corporation to the plaintiffs in this controversy. Indeed, Dr. Gue advanced this precise argument in his Motion For Partial Summary Judgment. Having previously decided that neither plaintiff was entitled to enforce the covenant not to compete because the agreement had not been properly assigned during the transformation and restructuring that occurred during Pro-Edge Ltd.'s metamorphosis into Pro-Edge, L.P., it would defy logic to allow the transverse to occur—namely to allow Dr. Gue to enforce a different provision of the same agreement against the plaintiffs. In essence, this court will not permit Dr. Gue to have his cake and eat it, too, by judicially endorsing his attempt to enforce the very agreement against the plaintiffs that they are precluded from enforcing against Dr. Gue. As such, Dr. Gue's Motion For Attorney Fees And Expenses is **denied** in its entirety.

### III. CONCLUSION

Having reviewed the parties' briefs, the record, applicable law, and the evidence presented during the hearing, it is hereby ordered that:

1. Defendant's Motion To Execute Upon Injunction Security And Additional Damages is hereby **granted** (Doc No. 57).

2. The entirety of the $30,000 security bond posted by the plaintiffs shall be **forfeited** to Dr. Charles S. Gue, DVM.

3. The plaintiffs are hereby **ordered** to pay $86,084 in additional damages to Dr. Gue for the direct and proximate damages caused by the wrongful injunction. However, only $28,042 of these additional damages are due and payable now. The remaining $58,042 of the award to Dr. Gue shall be held in abeyance until until final resolution of the other claims in this case.

4. The defendant's Motion For Attorney Fees And Expenses is hereby **denied in its entirety**.

**IT IS SO ORDERED.**

**DATED** this 13th day of September, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA